KAREN P. HEWITT
United States Attorney
PHILLIP L. B. HALPERN
Assistant U.S. Attorney
California State Bar No. 133370
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5165
E-mail: phillip.halpern@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07cv2194-WQH(AJB) |
| Plaintiff, | ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| v. | ) | MOTION FOR JUDGMENT BY DEFAULT AS TO THE INTEREST OF ALL |
| $1,012,538.75 IN U.S. CURRENCY, | ) | POTENTIAL CLAIMANTS |
| Defendant. | ) | DATE: April 28, 2008 |
| | ) | TIME: 11:00 a.m. |
| | | CTRM: 4 |

NO ORAL ARGUMENT PURSUANT
TO LOCAL RULE

I

MEMORANDUM OF POINTS AND AUTHORITIES

A.    Introduction

This matter comes before the Court on Plaintiff's motion for default judgment.  The verified complaint commencing this action against the Defendant was filed November 16, 2007, alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) and (C).  The complaint was verified by Jamie E. Harrison, Special Agent with United States Internal Revenue Service, Criminal Investigation Division.  The present motion for default judgment seeks the forfeiture of the interest of Brent Roger Wilkes, John Thomas Michael, and all potential claimants.

//

//

**EXHIBIT 1**

B.    Statement of the Case

1.    On November 16, 2007, a Complaint for Forfeiture was filed in the above action in the United States District Court for the Southern District of California against the above defendant.

2.    On November 20, 2007, the defendant was seized and arrested by a duly authorized representative of the Internal Revenue Service, who thereafter took possession and custody of the defendant, pursuant to the Court's Order appointing the Internal Revenue Service as custodian, dated November 19, 2007.

3.    On November 27, 2007, pursuant to Rule G(4)(b)(i) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims (hereinafter referred to as the "Supplemental Rules") a Notice of Judicial Forfeiture Proceedings and a copy of the Complaint for Forfeiture were sent by certified mail to the following potential claimants at their addresses of record:

| Name and Address | Article No. | Result |
|---|---|---|
| Brent Roger Wilkes<br>c/o Mark Geragos<br>Attorney at Law<br>Geragos & Geragos<br>PLC 350 S. Grand Avenue, 39th Floor<br>Los Angeles, CA 90071-3480 | 7004 2510 0003 3013 3134 | Signed for as received on or about 12/15/07 |
| John Thomas Michael<br>c/o Raymond R. Granger<br>Attorney at Law<br>Granger & Assoc. LLC<br>757 Third Avenue, 7th Floor<br>New York, NY 10017 | 7004 2510 0003 3013 3141 | Signed for as received on or about 12/01/07 |

4.    On December 7, 14 and 21, 2007, pursuant to Rule G(4)(a) of the Supplemental Rules, notice was published in the San Diego Commerce newspaper.  From the time of said notice, no claim or answer has been filed regarding the above-named defendant property by anyone.  *See* Supplemental Rules at G(5).

5.    On January 31, 2008, a Declaration of and Request for Clerk's Entry of Default was filed in this case.  A Clerk's Entry of Default was issued on February 1, 2008, and a copy is hereby attached as Exhibit 2.

//

C.     Statement of Facts

1.     Thomas Theodore Kontogiannis (also known as "Tommy K") is a New York resident that has been associated with scores of different businesses. These businesses appear to operate in diverse areas, including construction, property management, and mortgage brokerage.

2.     On May 30, 1993, Kontogiannis was arrested (along with an official from the United States Embassy) and charged with immigration fraud, false statements, visa fraud, bribery and conspiracy. Thereafter, Kontogiannis pled guilty to conspiracy to smuggle illegal aliens into the United States. On September 14, 1994, he was sentenced to five years probation, fined $12,000, and placed on three months' house arrest. The court also ordered restitution in the amount of $8,000.

3.     In 2000, the Queens County District Attorney's Office in New York was investigating Kontogiannis and others for their involvement in a scheme to rig bids, pay bribes, receive kickbacks and fix New York Board of Education contracts to supply millions of dollars worth of computers to the public school system.[1]

4.     On October 31, 2000, Kontogiannis was arrested (along with four other individuals and five corporations) for charges stemming out of the bid-rigging scheme. Subsequently, Kontogiannis and several of his related businesses, including Brookville Plaza Management Inc., Olympicorp International and Group Kappa Corp., were charged in a 123-Count Indictment (no. 2883/2000) filed in the New York Supreme Court, County of Queens. Among other things, the Indictment charged Kontogiannis with Grand Larceny, Conspiracy, Bribery and falsifying records.

5.     On October 18, 2002, Kontogiannis, Olympicorp, and Group Kappa Corp. (among others) pled guilty in Queens County Superior Court to Scheme to Defraud (in the 2nd Degree), an Attempted Donnelly Act violation; and Giving Unlawful Gratuities. In his plea, Kontogiannis

[1]     On October 19, 2000, then Congressman Randy "Duke" Cunningham wrote to the Queens District Attorney (on his Congressional letterhead) asserting "that there may be a political agenda being waged [in this matter and that] Mr. Kontogiannis is being allegedly victimized." In the letter, he also indicates that he has "filed a congressional inquiry with Chairman Henry Hyde of the House Judiciary Committee on this matter.

admitted to taking part in a corrupt scheme to rig bids, pay bribes and receive kickbacks in order to influence the awarding of school computer contracts.[2]

6.    On or about September 6, 2005, another business that was controlled by Kontogiannis, InterAmerican Mortgage Corporation, agreed to reimburse the Department of Housing and Urban Development ("HUD") for as much as $2 million for making fraudulent home mortgage loans to 19 home buyers.  InterAmerican had falsified income, asset and down payment information which enabled  purchasers to qualify for larger mortgages than they could otherwise afford.

7.    On February 23, 2007, Kontogiannis pled guilty to a one-count information charging him Money Laundering in violation of Title 18, United States Code, Section 1957.  This offense was related to Kontogiannis's assisting former Congressman Cunningham with laundering the proceeds of bribes.

8.    Kontogiannis pled guilty pursuant to a written plea agreement in which he agreed to forfeit $1,012,538.75, as proceeds traceable to certain unlawful activities, including violations of Title 18, United States Code, Section 1957.

9.    On May 7, 2007, Parkview Financial, Inc. (a New York based financial company controlled by Kontogiannis) issued check no. 1026 in the amount of $1,012,538.75 to the United States Treasury Department.  This check was drawn on Parkview Financial Inc. escrow account No. (ending in 8174), which is located at the North Fork Bank, Bellerose, New York 11426.

10.    Parkview Financial check no. 1026 was subsequently deposited into a United States Treasury suspense account.

11.    A review of Parkview Financial Escrow Account No. (ending in 8174) reveals that the $1,012,538.75 (check no. 1026) was derived from several transfers from Loring Estates LLC

---

[2]    As part of a plea agreement, it appears that Kontogiannis again received a probationary sentence.  It also appears that he and his business had to pay $4.8 million in restitution that was partially secured by a mortgage on the property located at 1 Cross Island Plaza, Rosedale, New York.

("Loring Estates") bank account no. (ending in 0329). According to bank records, this account is also located at the North Fork Bank and controlled by Mr. Kontogiannis.[3]

12.    The funds contained in the Loring Estates bank account, in turn, appear to be derived exclusively from a wire and bank fraud scheme perpetrated by Kontogiannis in order to obtain a series of fraudulent mortgages. This conclusion has been confirmed, *inter alia,* through admissions made by Kontogiannis, statements made by witnesses, and various documents and records (including bank records and loan files). This information reveals that this mortgage fraud and money laundering scheme involves over $100 million in fraudulent mortgages. Most of these fraudulent mortgages were written for addresses associated with construction projects that Kontogiannis was developing or was preparing to develop.

13.    This mortgage fraud scheme lasted for years, with lulling payments continuing through at least July 2007. This scheme operated like a traditional Ponzi scheme in which additional fraudulent mortgages were written and sold to unsuspecting financial institutions (Washington Mutual alone purchased over $50 million of these fraudulent mortgages) in order to make payment on, or pay off, older fraudulent mortgages.

14.    Another aspect of the scheme was the use of multi-layered financial transactions in order to inhibit the tracing of money to specific mortgages. One pattern of such activity involved the use of the Loring Estate bank account at North Fork Bank. Loring Estates is a development project associated with Kontogiannis and a project associated with millions of dollars of fraudulent mortgages. Typical activity for this account and scheme would involve the following:

    a.    depositing mortgage fraud proceeds (generated either directly from credit line being used to temporarily fund mortgages or from the ultimate sale of the fraudulent mortgage) into the Loring Estates account;

    b.    transferring of proceeds to another Kontogiannis-related account held in the name of Parkview Financial, Inc., or Coastal Capital Corp.;

---

[3]    North Fork Bank records reveal that Kontogiannis has over 70 separate bank accounts at this single financial institution.

c.    transferring of proceeds to yet another Kontogiannis-related account held in the name of Parkview Financial, Inc.; and

d.    Parkview Financial remits lulling payments for dozens of fraudulent mortgages.

15.    The foregoing pattern dates back to at least 2005 and continued through at least July 2007. The defendant $1,012,538.75 was seized mid-stream in this pattern – after it had been transferred from the Loring Estates account into Parkview Financial account no. (ending in 8174).

D.    Deadlines for Filing a Claim and Answer

This civil forfeiture action is an in rem proceeding which is governed by Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. Pursuant to Rule G(5), a verified claim must be filed with the Clerk of the United States District Court, Southern District of California, with a copy to the Government attorney, within thirty-five (35) days after service of the Notice of Judicial Forfeiture Proceedings, or within such additional time as the court may allow. An answer must be filed and served within twenty (20) days thereafter, pursuant to Title 18, United States Code, Section 983(a)(4)(B).

Supplemental Rule G(5) provides in pertinent part: "The claim must: (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

The plaintiff served notice of forfeiture on all known potential claimants on November 27, 2007. From the time of said notice, no claim or answer has been filed by any potential claimants regarding the above-named defendant. (See Declaration of Phillip L. B. Halpern, attached hereto as Exhibit 3.)

E.    The Government Establishes Its Case by a Preponderance
of the Evidence

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 the burden of proof in civil forfeiture cases is a preponderance of the evidence. Title 18, United States Code, Section 983(c) states in pertinent part:

//

In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property -

(1)    the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;

(2)    the Government may use evidence gathered after the filing of the complaint for forfeiture to establish, by a preponderance of the evidence, that the property is subject to forfeiture; and

(3)    if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

The Government's evidence is undisputed by any claimant.  Thus, the Government has shown by a preponderance of the evidence that the defendant was property involved in a transaction or attempted transaction, or was property traceable to property involved in the violation of Title 18, United States Code, Section 981(a)(1)(A) and (C).

Pursuant to the allegations in the verified complaint that the defendant constitutes property that was involved in and proceeds of the violation of Title 18, United States Code, Sections 1343, 1344 and 1957 (wire fraud, bank fraud, and money laundering), the Government has both proven its case by a preponderance of the evidence and established the requisite nexus between the defendant and the offense.

II

CONCLUSION

For the foregoing reasons, it is requested that the interest of Brent Roger Wilkes, John Thomas Michael and any other potential claimants be ordered condemned and forfeited to the United States according to the request herein.

DATED:  April 1, 2008.

KAREN P. HEWITT
United States Attorney

s/Phillip L. B. Halpern

PHILLIP L. B. HALPERN
Assistant U.S. Attorney
Email: phillip.halpern@usdoj.gov

07cv2194